IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GREGG ERIC WALLACE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. JRR-23-0345 |
| DEPUTY WOLFE, | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

Self-represented plaintiff, Gregg Eric Wallace, an inmate presently incarcerated at Jessup Correctional Institution in Jessup, Maryland, and formerly incarcerated at Harford County Detention Center, in Bel Air, Maryland, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against Harford County Sheriff's Deputy Wolfe. ECF No. 1. Plaintiff alleges that while he was held at Harford County Detention Center, he was assaulted by Defendant Wolfe who then wrote a false report. *Id*. He seeks Wolfe's termination from employment and compensatory damages. *Id*.

On June 9, 2023, Defendant filed a Motion to Dismiss. ECF No. 11. On June 29, 2023, Plaintiff filed his Response in Opposition to Defendant's dispositive motion. ECF No. 13. On July 19, 2023, Defendant filed a Reply. ECF No. 16.

Having reviewed the submitted materials, the court finds that no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, Defendant's Motion to Dismiss will be denied.

### BACKGROUND

**A. Plaintiff's Complaint**

Plaintiff alleges that, on January 24, 2023, he was escorted from his cell to the dayroom for his hour of recreation and a shower. ECF No. 1 at 2-3. When he entered the front of A-Block, he saw Deputy Wolfe standing in the back of the A-Block dayroom. Plaintiff asked why Wolfe was in the dayroom and Wolfe directed him to enter the room. *Id*. at 3. As Plaintiff entered the dayroom, he asked Wolfe again why he was there; Wolfe replied, "Today you get your ten minutes." When Plaintiff asked "ten minutes for what," Wolfe replied "to get your ass whooped." *Id*. Wolfe then directed the escorting officers to remove Plaintiff's handcuffs, but they each declined to do so. Wolfe then rushed at Plaintiff, grabbed him by his arms and twice attempted to slam him into the wall. When Wolfe was unsuccessful in slamming Plaintiff into the wall, he exited the dayroom threatening to "get [Plaintiff] at a later date." *Id*. Plaintiff sates that his arm was injured during the altercation and a picture was taken of his injury. *Id*. Plaintiff states that the incident was recorded on surveillance video. *Id*. Plaintiff reported the altercation to the Chief of Security and to the Dayshift Commander, but neither seemed to care. *Id*. at 4. Plaintiff's day room privileges were suspended for the day. *Id*. Other officers attempted to tell the Chief of Security what happened but were instructed not to write a report. *Id*. After the altercation, Wolfe falsified a report claiming that Plaintiff assaulted him. *Id*.

**B.  Defendant's Dispositive Motion and Plaintiff's Response in Opposition**

Defendant argues that Plaintiff's Complaint should be dismissed because he failed to exhaust his administrative remedies and failed to state a claim upon which relief may be granted because the use of force alleged was de minimis. *Id*. In opposition, Plaintiff explains why his Complaint should not be dismissed for failure to exhaust administrative remedies and expands upon the allegations made in the Complaint regarding the use of force. ECF No. 13.

### C. Administrative Remedy Procedures

In his initial Complaint, Plaintiff states that he did not pursue an administrative remedy regarding the events complained of "[b]ecause [he] personally spoke with the Warden and a[n] investigation was ordered." ECF No. 1 at 2. Defendant relies on this statement as evidence that Plaintiff did not exhaust his administrative remedies. He argues that Plaintiff's statement "unequivocally establishes that there was an administrative process and that the Sheriff's Office, which operated the Harford County Detention Center, had undertaken to make the administrative grievance process available." ECF No. 11-1 at 4.

In his response, Plaintiff explains that he did not need to file an administrative grievance because, in order to initiate the grievance process, inmates must request a grievance from the Chief of Security. ECF No. 13 at 1. If the Chief of Security grants a grievance, the grievance then goes to the Assistant Warden who determines what, if any, action will be taken. *Id*. Plaintiff states that the administrative grievance process was unnecessary because the Warden and Assistant Warden came to see Plaintiff the day after the incident, suspended Deputy Wolfe, and ordered an outside investigation by internal affairs. *Id*. Plaintiff maintains that because the Warden overtook the Assistant Warden's role in the grievance process, there was no reason to pursue the issue through an administrative process. *Id*.

Defendant replies that if the internal investigation operated as a substitute for the administrative process, Plaintiff nevertheless did not exhaust such remedy. ECF No. 16 at 3. Defendant argues that, to the extent Plaintiff argues that the investigation is a substitute for the administrative grievance process, he has failed to demonstrate exhaustion of that process. *Id.*

**D. Excessive Force**

Defendant next contends that the alleged use of force was de minimis and that Plaintiff failed to allege that the use of force resulted in any observable injury. ECF No. 11-1 at 5. Plaintiff alleged in his initial Complaint that his arm sustained an injury and a photograph of the injury was taken. ECF No. 1 at 4. In his opposition response, Plaintiff further explains that the force used during the incident separated his right shoulder. ECF No. 13 at 2. He attaches to his opposition an x-ray report dated March 21, 2023 and an MRI report dated May 2, 2023. ECF No. 13-1 at 1-2. The MRI of his shoulder showed a widening of the acromioclavicular joint measuring 15 mm transverse with distortion of the acromioclavicular ligaments. Minimal superior migration of the distal clavicle in relation to the acromion was also noted. ECF No. 13-1 at 2. Plaintiff states that he is scheduled for a surgical consult regarding the injury to his shoulder. *Id*. at 4.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal conclusions,

4

elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

*Pro se* complaints must be construed liberally and must be "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '*beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'"  *Spencer v. Earley*, 278 F. App'x 254, 259–60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)).  However, despite this liberal construction requirement, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  Courts are not required to "conjure up questions never squarely presented to them" nor "construct full blown claims from sentence fragments."  *Id.*  When ruling on a motion to dismiss, the Court may consider materials attached to the complaint without transforming the motion to dismiss into one for summary judgment.  *See* Fed. R. Civ. P. 10(c).  The Court may also consider materials attached to a motion to dismiss, so long as such materials are integral to the complaint and authentic.  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## DISCUSSION

A. **Exhaustion of Administrative Remedies**

Defendant raises the affirmative defense that Plaintiff failed to exhaust his administrative remedies. If Plaintiff's claim has not been properly presented through the administrative remedy procedure, it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v.*

6

*French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'…normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he…PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 578 U.S. 632, 635 (2016). Specifically the Court rejected a "special circumstances" exception to the exhaustion requirement but reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 635-36. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643.

7

First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.  Within the Maryland Division of Correction where there is an Intelligence and Investigative Division investigation into an officer's use of force, Maryland's scheme for administrative remedies is unavailable. *Crowder v. Younger* 79 F.4th 373 (4th Cir. 2023)

Plaintiff contends that the regular administrative remedy process was not available to him because the Warden ordered an internal investigation.  Defendant does not contest Plaintiff's claim that he was not required to utilize the normal administrative process once the Warden ordered an internal investigation.  Defendant, who raises the affirmative defense of failure to exhaust and who carries the burden of proof, fails to offer any explanation as to what the administrative remedy process is within the Harford County Detention Center.  Defendant also fails to explain whether an internal investigation of a claimed use of excessive force is an administrative remedy parallel to an existing process, supplants the normal administrative process, or has no effect on the administrative process.  Defendant contends that if the internal investigation is a substitute for the regular administrative remedy then Plaintiff failed to demonstrate that process was completed.  However, Defendant, whose burden it is to prove non-exhaustion, has provided no evidence regarding any of the administrative or internal investigation process at Harford County Detention Center, making it impossible to discern whether Plaintiff had access to any administrative remedy

process. As such, the court cannot say on the record before it that Plaintiff failed to exhaust available administrative remedies. Therefore, the Motion may not be granted on that basis.

## B. Excessive Force

An inmate may bring an Eighth Amendment[1] challenge to a defendant officer's "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). An inmate's Eighth Amendment claim involves a subjective and an objective component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered [by], or injury inflicted on, the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F. 3d 225, 238 (4th Cir. 2008) (*quoting Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).

As to the objective component, an inmate must demonstrate his injury is sufficiently serious to rise above the level of de minimis harm. *Id.* at 238 (citing *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)). As to the subjective component, the inmate must show that the officer acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Whether an officer "acted with wantonness" depends on "(1) the need

---

[1] Neither party explains whether Plaintiff was a pretrial detainee or convicted inmate at the time of the altercation. If Plaintiff was a pretrial detainee then his right to be free from excessive force is guaranteed by the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396, *see also Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016). Objective reasonableness "turns on the 'facts and circumstances of each particular case.'" *Id*. at 397, quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). This court is obliged to "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Kingsley* 576 U.S. at 397. The court finds that to the extent he was a pretrial detainee at the time of the altercation, Plaintiff has stated a claim of excessive force under the Fourteenth Amendment.

for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

Defendant contends that the force used was de minimis. But Plaintiff's allegations are that, while handcuffed and under the escort of two other officers, Defendant sought to have Plaintiff's handcuffs removed so that he could "whoop his ass" for ten minutes. When the escorting officers refused to remove Plaintiff's handcuffs and hand him over to Defendant, Defendant moved toward Plaintiff in an effort to engage him in a fight. Defendant twice tried to slam the handcuffed and escorted Plaintiff into the wall. Although unsuccessful in doing so, Plaintiff alleges that Defendant injured his arm causing his shoulder to be separated. Plaintiff's allegations, taken as true, demonstrate that there was no need for the application of force and thus no relationship between the amount of force applied and the need. Further, according to Plaintiff, there was no threat that required any use of force and no effort to temper the force applied. When viewing the Complaint allegations and opposition response in the light most favorable to Plaintiff, Defendant's argument that Plaintiff fails to state a claim does not prevail.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied. Defendant shall be required to answer the Complaint.

A separate order follows.

\_\_\_\_12.15.203_____  _____/S/_____
Date                                                          Julie R. Rubin
                                                              United States District Judge